# EXHIBIT 1

NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12798

MARK R. THOMPSON & another[1]  vs.  JPMORGAN CHASE BANK, N.A.

Suffolk.    February 13, 2020. - November 25, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.[2]

Mortgage, Foreclosure, Real estate.  Real Property, Mortgage, Sale.  Sale, Real estate.  Notice, Foreclosure of mortgage.

Certification of a question of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

Alan E. Schoenfeld, of New York (Arpit Garg, of the District of Columbia, & Mark C. Fleming also present) for the defendant.
Todd S. Dion for the plaintiffs.
The following submitted briefs for amici curiae:
Andrew C. Glass, Gregory N. Blase, & Hollee M. Watson for American Bankers Association & others.
Marissa I. Delinks & Samuel C. Bodurtha for Federal National Mortgage Association & another.
Francis J. Nolan for Real Estate Bar Association for Massachusetts, Inc., & another.
Jack Saade, pro se.

---

[1] Beth A. Thompson.

[2] Chief Justice Gants participated in the deliberation on this case prior to his death.

GAZIANO, J.  Eight years after the plaintiff homeowners defaulted on their mortgage payments, JPMorgan Chase Bank, N.A. (Chase or bank), foreclosed on their home and sold it at auction pursuant to the statutory power of sale.  See G. L. c. 183, § 21.  In the course of the foreclosure, Chase sent the notice required by G. L. c. 244, § 35A, and scripted in regulations issued by the Division of Banks (division) at 209 Code Mass. Regs. § 56.04.  The division does not permit a foreclosing mortgagee to alter the language of the required notice, which provides, inter alia, that "you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place."  209 Code Mass. Regs. § 56.04.  The terms of the plaintiffs' mortgage, however, specified that they could reinstate their mortgage by paying all past due amounts until "five days before sale of the Property pursuant to any power of sale contained in this Security Instrument."

One month after the foreclosure sale, the plaintiffs commenced this action in the Superior Court to set aside the foreclosure.  They argued that these conflicting statements as to the last day upon which they possibly could reinstate their mortgage -- up to the foreclosure sale, as the notice stated, or up to five days before the foreclosure sale, as the terms of the mortgage provided -- meant that the bank's notice was

misleading, potentially deceptive, and therefore should render the foreclosure sale void.  See, e.g., Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 240 (2015).

After the matter was removed to the United States District Court for the District of Massachusetts, a Federal District Court judge granted summary judgment to Chase.  See Thompson vs. J.P. Morgan Chase Bank, N.A., U.S. Dist. Ct., No. 18-10131 (D. Mass. May 11, 2018) (Thompson I).  The United States Court of Appeals for the First Circuit reversed.  See Thompson v. JPMorgan Chase Bank, N.A., 915 F.3d 801, 805 (1st Cir.) (Thompson II), opinion withdrawn, 931 F.3d 109 (1st Cir. 2019) (Thompson III).  It concluded that, because the notice failed to include the five-day limitation specified in the mortgage contract, the notice was potentially deceptive and, therefore, void pursuant to our decision in Pinti.  Thompson II, 915 F.3d at 804-805, citing Pinti, 472 Mass. at 237-238.

On a petition for reconsideration, in which Chase and numerous amici pointed out for the first time that the bank was required under Massachusetts law to send the notice verbatim, the First Circuit vacated its decision and certified the following question to this court:

> "Did the statement in the August 12, 2016, default and acceleration notice that 'you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place' render the notice inaccurate or deceptive in a manner that renders the

>subsequent foreclosure sale void under Massachusetts law?"

Thompson III, 931 F.3d at 111.

We answer the reported question, "No." Paragraph 16 of the plaintiffs' mortgage states that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Accordingly, the longer time for reinstatement specified by G. L. c. 244, § 35A -- any time prior to the foreclosure sale -- constitutes controlling and applicable law that supersedes the conflicting provision of the mortgage contract. Because that statute and its enabling regulations obligate mortgagees to accept a reinstatement payment at any time prior to a foreclosure sale, just as the notice stated, the notice sent by Chase was neither deceptive nor misleading.

1. Background. On June 13, 2006, the plaintiffs entered into a residential mortgage agreement with Washington Mutual Bank to secure a $322,500 loan. See Thompson II, 915 F.3d at 802. The mortgage was a standard form "Freddie Mac/Fannie Mae" residential mortgage (a so-called GSE Uniform Mortgage), an instrument widely used across Massachusetts. See Pinti, 472 Mass. at 236 n.16.

a. Legal background. Two provisions of a GSE Uniform Mortgage contract are particularly relevant here. Paragraph 22

specifies notice requirements that must be met before a mortgagee may accelerate a loan and begin foreclosure proceedings.[3]  Paragraph 19 of the GSE Uniform Mortgage places limits and conditions on mortgagors' rights to reinstate a mortgage after acceleration.  Paragraph 19 includes the provision at issue here, which purports to terminate the plaintiffs' right to reinstate "five days before sale of the Property pursuant to any power of sale contained in this Security Instrument."[4]

---

[3] Paragraph 22 provides:

"Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. . . ."

[4] Paragraph 19 of the mortgage states:

As do the contractual obligations of paragraph 22 of the GSE Uniform Mortgage, G. L. c. 244, § 35A, also establishes notice requirements before a foreclosing mortgagee can accelerate a mortgage obligation and foreclose based on borrower default.  Under the statute, the required notice must inform the mortgagor, inter alia, "that the mortgagor may redeem the property by paying the total amount due, prior to the foreclosure sale."  G. L. c. 244, § 35A (c) (8).  As mentioned, the division has issued regulations specifying the precise form that this notice must take; a foreclosing mortgagor may not

---

"Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. . . ."

alter the notice.  See 209 Code Mass. Regs. § 56.04 ("the '90-day Right to Cure Your Mortgage Default' notice must conform to the following: . . ." [emphasis added]).

    b.  <u>Foreclosure and prior proceedings</u>.  Sometime after 2008, the United States Office of Thrift Supervision seized Washington Mutual Bank and placed it in receivership with the Federal Deposit Insurance Corporation (FDIC); the FDIC then sold its banking subsidiaries to Chase.  See <u>Thompson II</u>, 915 F.3d at 803.  In this way, Chase became the mortgagee on the plaintiffs' mortgage.  <u>Id</u>.  In July of 2009, the plaintiffs defaulted on their mortgage; since that time, they have made no payments.

    On August 12, 2016, Chase sent the plaintiffs notice of its intention to accelerate the loan and foreclose on their home.  In accordance with the requirements of both G. L. c. 244, § 35A, and paragraph 22 of the plaintiffs' mortgage, the notice relayed that (1) the mortgage loan was in default; (2) tendering the past-due amount of $200,056.60 would cure the default; (3) the default had to be cured by November 10, 2016; and (4) if the plaintiffs failed "to cure the default on or before [November 10, 2016], Chase [could] accelerate the maturity of the Loan, . . . declare all sums secured by the Security Instrument immediately due and payable, commence foreclosure proceedings, and sell the Property."  See <u>Thompson II</u>, 915 F.3d at 803.  The

notice also informed the plaintiffs of their right to reinstate the mortgage after acceleration, and explained that they could bring a court action asserting any defenses to foreclosure.  Id. It further stated that the plaintiffs could "still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place."  This notice conformed verbatim to the template required by 209 Code Mass. Regs. § 56.04.

After the foreclosure sale and the filing of the plaintiffs' complaint to set aside the foreclosure in the Superior Court, Chase removed the case to the United States District Court for the District of Massachusetts.  There, the plaintiffs argued that, while the notice sent by Chase informed them of a "right to reinstate," it did not specify the temporal limitations on that right contained in paragraph 19 of their mortgage.  This, they claimed, rendered the notice potentially deceptive such that the foreclosure sale was void.  A United States District Court judge disagreed, and determined that strict compliance with the notice requirements of paragraph 22 did not require specifying the conditions placed upon the plaintiffs' right to reinstate contained in paragraph 19. Accordingly, the judge allowed Chase's motion to dismiss.

On appeal to the First Circuit, the plaintiffs renewed this argument.  See Thompson II, 915 F.3d at 803.  Considering the claim de novo, the court concluded that Chase had complied with

the facial requirements of paragraph 22, which only obligated Chase to give notice of the plaintiffs' substantive right to reinstate.  Id. at 804.  The court also correctly noted that paragraph 19 contains no independent notice requirement.  Id.  Nonetheless, the court concluded Chase's notice was potentially deceptive because it "could mislead the [plaintiffs] into thinking that they could wait until a few days before the sale to tender the required payment."  Id.  The court reached this determination by reading our decision in Pinti, 472 Mass. at 238, to stand for the proposition that "accuracy and avoidance of potential deception are conditions of the validity of the foreclosure."  Id. at 805.  Thus, it concluded that "the bank had no obligation under paragraph 19 to lay out its procedures, but it did have an obligation under paragraph 22 to provide notice and, under Pinti, to make anything it did say accurate and avoid potential deception."  Id.

As noted, supra, Chase and several amici argued on reconsideration that Massachusetts law required the notice in question to be sent unaltered, and that substantial upheaval in the residential mortgage market would result from the Thompson II decision.  See Thompson III, 931 F.3d at 110.  The

First Circuit then set aside its decision and certified the relevant question to this court.  See id. at 110-111.[5]

2.  Discussion.  Massachusetts is a "non-judicial foreclosure state," meaning that it allows a mortgagee to foreclose on a mortgaged property without judicial authorization, so long as the mortgage instrument grants that right by reference to the statutory power of sale.  See Pinti, 472 Mass. at 232, citing U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 645-646 (2011); G. L. c. 183, § 21.  A foreclosing mortgagee, however, "first [must] comply[ ] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."  G. L. c. 183, § 21.  Because of the "substantial power . . . to foreclose in Massachusetts without judicial oversight," we repeatedly have emphasized that "one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the power, and the sale is wholly void." Federal Nat'l Mtge. Ass'n v. Marroquin, 477 Mass. 82, 86 (2017), quoting Pinti, 472 Mass. at 232-233.  See Pryor v. Baker, 133

---

[5] We acknowledge the amicus brief of American Bankers Association, American Financial Services Association, Bank Policy Institute, Massachusetts Bankers Association, Massachusetts Mortgage Bankers Association, and Mortgage Bankers Association in support of the defendant; of Federal National Mortgage Association and Federal Home Loan Mortgage Corporation in support of the defendant; of Real Estate Bar Association for Massachusetts, Inc., and the Abstract Club; and of Jack Saade.

Mass. 459, 460 (1882) ("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor").

This regime of strict compliance does not require a mortgagee to "demonstrate punctilious performance of every single mortgage term." Pinti, 472 Mass. at 235.  Rather, since the Nineteenth Century, our cases consistently have required strict compliance "with the terms of the actual power of sale in the mortgage [and] with any conditions precedent to the exercise of the power that the mortgage might contain." Id. at 233-234 (collecting cases).  In Pinti, 472 Mass. at 235, we summarized our jurisprudence concerning what counts as a condition precedent as "(1) terms directly concerned with the foreclosure sale authorized by the power of sale in the mortgage,[6] and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale -- whether before or after the sale takes place." Id.

Consistent with these long-standing principles, in that and subsequent cases, we have continued to delineate which aspects

---

[6] For example, in McGreevey v. Charlestown Five Cents Sav. Bank, 294 Mass. 480, 481, 484 (1936), we voided a foreclosure sale because the mortgage required the sale to be advertised and held in Suffolk County, even though the property was located in Middlesex County.  Similarly, in Moore v. Dick, 187 Mass. 207, 210-212 (1905), we voided a foreclosure sale for failure to comply with the terms of a mortgage contract which specified that the sale be advertised in a particular newspaper.

of the regulatory scheme require strict compliance before a valid foreclosure sale may take place.  See, e.g., Turra v. Deutsche Bank Trust Co. Americas, 476 Mass. 1020, 1022 (2017) (failure strictly to comply with postforeclosure requirements of G. L. c. 244, § 15A, did not render sale void); Pinti, 472 Mass. at 227, 239-240 (failure strictly to comply with notice requirements of GSE Uniform Mortgage paragraph 22 renders foreclosure void); U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 422 (2014) (failure strictly to comply with notice requirements of G. L. c. 244, § 35A, does not render foreclosure void because G. L. c. 244, § 35A, is not part of foreclosure process); Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 571, 580-581 (2012) (failure strictly to comply with requirements of G. L. c. 244, § 14, renders foreclosure void).

Here, Chase sent one notice which satisfied the requirements of both G. L. c. 244, § 35A, and, at least facially, those of paragraph 22 of the plaintiffs' GSE Uniform Mortgage.[7]  The possibility of such a so-called "hybrid notice"

---

[7] Some potential complexity arises because we have concluded that the terms of GSE Uniform Mortgage paragraph 22 are subject to strict compliance, while the requirements of G. L. c. 244, § 35A, are not.  See Pinti, 472 Mass. at 238-240 (distinguishing strict compliance requirement of paragraph 22 from decision in Schumacher, 467 Mass. at 430-431, that G. L. c. 244, § 35A, is not subject to strict compliance).  There is no actual conflict, however, in applying the holdings of both Pinti and Schumacher to a single notice.  Any provision contained in GSE Uniform Mortgage paragraph 22 must meet the heightened strictures of

is explicitly contemplated by paragraph 15 of the GSE Uniform Mortgage itself:  "[i]f any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument."

We agree with the First Circuit that Massachusetts law under Pinti, 472 Mass. at 235, 240, requires that any notice given pursuant to paragraph 22 of the GSE Uniform Mortgage, regardless whether hybrid, must be accurate and not deceptive. See Thompson II, 915 F.3d. at 804.  We disagree, however, that the notice here was potentially deceptive.  We reach this conclusion because we determine that the more generous reinstatement period provided under G. L. c. 244, § 35A, governs over the contractually imposed time limits on reinstatement articulated in paragraph 19 of the GSE Uniform Mortgage.

"The words of a contract must be considered in the context of the entire contract rather than in isolation." Brigade Leveraged Capital Structures Fund Ltd. v. PIMCO Income Strategy Fund, 466 Mass. 368, 374 (2013), quoting General Convention of New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007).  When interpreting a contract (such as the GSE

---

Pinti's compliance regime, while those notice provisions found only in G. L. c. 244, § 35A, would be subject to the lesser requirements articulated in Schumacher, supra.

Case 1:18-cv-12191-FDS   Document 41-1   Filed 11/30/20   Page 15 of 17

14

Uniform Mortgage), we construe it "as a whole, so as to give reasonable effect to each of its provisions" (quotation omitted).  James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 669 (2018).

Here, paragraph 12 of the plaintiffs' mortgage gives Chase the contractual ability to extend the deadline for a reinstatement payment.  Paragraph 16 provides that all "rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Applicable law is defined to include all "[F]ederal, [S]tate and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  Thus, the language of the mortgage itself gives notice to the plaintiffs that the five-day limitation of paragraph 19 could be extended either by the discretion of the mortgagee or, as is the case here, relevant provisions of State law.

Specifically, G. L. c. 244, § 35A, and its accompanying regulations require foreclosing mortgagees to send a notice specifying that, even after acceleration, homeowners have a legal right to "avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place."  209 Code Mass. Regs. § 56.04.  Reading paragraphs 12 and 16 of the plaintiffs' mortgage together with this applicable regulation makes clear

that Chase not only had the contractual option to accept a reinstatement payment at any point prior to foreclosure, it was required to do so.  Thus, while in other States the "five days prior" limitation contained in GSE Uniform Mortgage paragraph 19 may limit a mortgagee's unequivocal reinstatement rights, in Massachusetts, this limitation is superseded by the more generous reinstatement time period specified in the  statutory scheme.

   For this reason, the scenario that concerned the First Circuit, in which the plaintiffs would arrive three days prior to the sale, cash-in-hand, only to be rebuffed by Chase pointing to paragraph 19, could not happen.  Chase would be obligated to accept such a reinstatement payment under Massachusetts law; the fact that Massachusetts law would govern to allow a longer reinstatement period might not be abundantly clear to homeowners, based on the language that "limitations" of applicable law are applicable to the mortgage, but it is properly represented by the terms of the notice.

   Ultimately, the plaintiffs' contention that the notice requirements of G. L. c. 244, § 35A, are "of no significance" to Chase's duty to notify pursuant to paragraph 22 is unavailing. While we have read the terms of a mortgage and the statutes relating to the foreclosure of mortgages "as being separately grounded and having an independent meaning," Pinti, 472 Mass.

at 240, and the signatories certainly must comply strictly with the requirements of paragraph 22, even if G. L. c. 244, § 35A, were to be repealed or modified, there is nothing that says a single notice could not satisfy both the requirements of G. L. c. 244, § 35A, and of paragraph 22.  Indeed, the possibility explicitly is contemplated in the GSE Uniform Mortgage itself in paragraph 15.  Moreover, as a practical matter, the consumer protection aims of both the statutory scheme[8] and paragraphs 19 and 22 of the GSE Uniform Mortgage are better served by a single accurate notice rather than two potentially conflicting communications.

    3.  <u>Conclusion</u>.  Because the notice in question was neither inaccurate nor deceptive, we answer the reported question, "No."

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court.  The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States Court of Appeals for the First Circuit, as the answer to the question certified, and also will transmit a copy to each party.

---

    [8] See <u>Schumacher</u>, 467 Mass. at 430.